**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
CHRISTOPHER MCADAM,

                    Plaintiff,                          **MEMORANDUM OF**
                                                        **DECISION & ORDER**
          -against-                                     16-cv-6283 (ADS)(AKT)

SUFFOLK COUNTY POLICE DEPARTMENT,
COUNTY OF SUFFOLK, TIMOTHY D. SINI
*in his official and individual capacities*,

                    Defendant(s).
--------------------------------------------------------X

<u>**APPEARANCES:**</u>

**Law Offices of Christopher J. Cassar, P.C.**
*Attorneys for the Plaintiff*
13 East Carver Street
Huntington, NY 11743
          By:      Christopher J. Cassar, Esq.,
                   Joseph John Karlya, III, Esq., Of Counsel

**Suffolk County Attorney's Office**
*Attorneys for the Defendants*
100 Veterans Memorial Highway
Hauppauge, NY 11788
          By:     Drew W. Schirmer, Deputy County Attorney

**SPATT, District Judge:**

          This civil rights action was brought by the Plaintiff Christopher McAdam (the "Plaintiff")

against the Defendants County of Suffolk (the "County"), the Suffolk County Police Department

(the "SCPD"), and the SCPD Police Commissioner Timothy D. Sini ("Sini") (collectively, the

"Defendants"), alleging that they violated his constitutional due process rights in violation of 42

U.S.C. §1983 ("Section 1983") and defamed him.

1

Presently before the Court is a motion by the Defendants for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) dismissing the complaint. For the following reasons, the Defendants' motion is granted in its entirety.

## I. BACKGROUND

### A. The Relevant Facts

In June 2011, the Plaintiff sat for an open written competitive examination for entry into the SCPD. He received a passing grade; became an eligible candidate for the SCPD; and entered the SPCD Academy (the "Academy") in July 2015.

On July 18, 2015, the Plaintiff appeared for a physical fitness screening test at the Academy. The exam had three portions: sit-ups, push-ups, and a run. Each portion was timed, and the Plaintiff had to run a mile and a half, and complete a certain number of push-ups and sit-ups. The Plaintiff failed the sit-up portion of the exam, but was told that he could retake the exam at a later time.

His second physical exam was scheduled for August 1, 2015, but the Plaintiff was permitted to delay it until August 26, 2015 with a note from his doctor.

On August 26, 2015, the Plaintiff retook the physical exam under the supervision of Lieutenant Sweeney and Police Officer Santarpia. The Plaintiff claims that the supervising officers told him to complete the exam "out of order." That is, there is a standard order of sit-ups, push-ups, then the run. However, the Plaintiff states that he was told to complete the test in some other order.

On August 27, 2015, the Plaintiff was informed that the results from his exam the previous day were void because he completed the steps out of order. He was purportedly told that he could take the exam again.

2

The next day, August 28, 2015, the Plaintiff took the physical exam a third time, and passed.

Subsequently, he joined the Academy as a recruit with an expected graduation date of April 1, 2016.

On November 20, 2015, the Plaintiff avers that he was "temporarily discharged from the Academy without a notice or hearing," because of "alleged impropriety [in] allowing him to complete the August 28, 2015 physical examination." (Compl. ¶ 20).

On November 24, 2015, the Plaintiff filed suit (the "State Action") in the Supreme Court of the State of New York against the County, the SCPD, the Suffolk County Department of Civil Service, and the Police Commissioner (the "State Action Defendants"). He sought a preliminary injunction pursuant to N.Y. C.P.L.R. § 6301, asking that the Court enjoin the State Action Defendants from temporarily discharging him, and therefore permit him to complete his training. The action was also brought pursuant to Article 78 of the N.Y. C.P.L.R. ("Article 78"). The Plaintiff alleged that the decision to terminate him was arbitrary, capricious, unfair, and an abuse of discretion. He sought to be reinstated to his position, along with back pay and benefits.

On November 25, 2015, Justice John Bivona of the New York State Supreme Court, Nassau County, signed the Plaintiff's Order to Show Cause, and directed the State Action Defendants to show cause why the Plaintiff's requested relief should not be granted.

Thereafter, the Plaintiff was reinstated and completed his training at the Academy. His expected graduation date was April 1, 2016.

On March 29, 2016, applying New York State common law, Justice Arthur Pitts ("Justice Pitts") of the New York State Supreme Court issued a decision and order denying the Plaintiff's requested relief. Determining how to analyze the Plaintiff's claims, Justice Pitts stated:

The proper test to be applied is whether there is a rational basis for the administrative order. [*Colton v. Berman*, 21 N.Y.2d 322, 329, 234 N.E.2d 679, 681 (N.Y. 1967)][.] "It is well settled that a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion[.]" [*Diocese of Rochester v. Plan. Bd. of Town of Brighton*, 1 N.Y.2d 508, 520, 136 N.E.2d 827 (N.Y. 1956)][.] A county's civil service commission is afforded wide discretion in determining the fitness of candidates for appointment. Such discretion is particularly necessary in hiring police officers, to whom higher standards of fitness and character may be applied[.] [] [*S*]*ee*[] *Havern v. Senko*, 210 A.D.2d 480, 481, 620 N.Y.S.2d 470 ([N.Y. App. Div.] 1994)[]. A court should not interfere with the discretion of the civil service commission in determining the qualifications of candidates for police officer unless the decision is irrational and arbitrary so as to warrant judicial intervention[.] [][*S*]*ee*[] [*id.*]; *Matter of Shedlock v. Connelie, 66* A.D.2d 433, 414 N.Y.S.2d 55 ([N.Y. App. Div.] 1979), *aff'd*, 48 N.Y.2d 943, 42 N.Y.S.2d 95, 401 N.E.2d 217; *Matter of Metzger v. Nassau* [*Cty.*] *Civ. Serv. Comm.,* 54 A.D.2d 565, 386 N. Y.S.2d 890 ([N.Y. App. Div.] 1976))[;] [][] *Ressa v.* [*Cty.*] *of Nassau,* 224 A.D.2d 534, 638 N .Y.S .2d 158 ([N.Y. App. Div.] 1996)[][.]

(Defs.' Ex. 4 at 5). Justice Pitts found that the decision to terminate the Plaintiff was not arbitrary and capricious, or an abuse of discretion. He so ruled because a county's civil service commission is granted wide latitude in determining the qualifications of candidates for police officer; the Director of Personnel of the Suffolk County Department of Civil Service (the "Director") stated in an affidavit that the department has a policy of granting only one re-test, and the Plaintiff was impermissibly given two re-tests; and the Director further stated that the Plaintiff was given "an unexplained additional twenty-five days . . . after other candidates were given their re-test opportunity on August 1, 2015." (*Id.* at 6). Therefore, because the State Action Defendants gave reasons for the Plaintiff's dismissal, Justice Pitts found that his dismissal was not arbitrary or capricious.

On March 30, 2016, two days before his scheduled graduation date, the Plaintiff was permanently dismissed from the SCPD. The Plaintiff claims that he was not afforded notice or a hearing prior to his discharge.

On June 10, 2016, Justice Pitts dismissed the Plaintiff's Article 78 proceeding against the County and the SCPD. (Defs.' Ex. 5).

**B. The Relevant Procedural Background**

The Plaintiff filed the instant complaint on November 11, 2016. The complaint specifies three causes of action: deprivation of federal constitutional due process in violation of Section 1983; deprivation of state constitutional due process; and common law defamation. As the Plaintiff did not specify in his complaint whether his due process claims were procedural or substantive, the Court will assume that he has brought claims for both causes. The Defendants filed an answer on December 30, 2016.

On January 20, 2017, the Defendants filed the instant motion for a judgment on the pleadings pursuant to Rule 12(c). The Defendants attached six exhibits to their motion: a declaration in support of the Defendants' motion from the Defendants' counsel; the instant complaint; the Defendants' answer in the instant case; the signed Order to Show Cause and the Plaintiff's petition and supporting documents from the State Action; Justice Pitts' March 29, 2016 decision denying the Plaintiff's requested relief; and Justice Pitts' June 10, 2016 Decision dismissing the Plaintiff's complaint in the State Action.

## DISCUSSION

**A. The Applicable Legal Standard**

The standard for a motion for a judgment on the pleadings pursuant to Rule 12(c) is the same as a motion to dismiss a complaint pursuant to Rule 12(b)(6). *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of

the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## B. The Parties' Arguments

The Defendants contend that they are entitled to a judgment on the pleadings pursuant to Rule 12(c) based on several grounds: the Plaintiff is barred from bringing his claims by *res judicata*, collateral estoppel, and the *Rooker-Feldman* doctrine; as a probationary employee, the Plaintiff had no property interest in his position with the SCPD, and therefore has no protectable

property interest; in failing to succeed on an Article 78 proceeding, the Plaintiff failed to satisfy a condition precedent for his Section 1983 action; the Plaintiff does not set forth adequate facts for a defamation claim; Sini has qualified immunity; and the claims against the SCPD must be dismissed because it is an agency of the County and cannot be sued as a separate entity.

Before addressing the merits of the Defendants' arguments, the Plaintiff asks the Court to procedurally deny the Defendants' motion because he claims that the Defendant's motion is, in truth, one for summary judgment. As to the substance of the Defendants' contentions, the Plaintiff argues that his claims are not barred by any of the doctrines cited by the Defendants; he had a cognizable property interest in his position with the SCPD; he was not required to succeed on an Article 78 proceeding before initiating this suit; his defamation claim is sufficiently pled; and Sini is not entitled to qualified immunity.

## C. As To Whether the Defendants' Motion is a Motion for Summary Judgment Disguised as One for a Judgment on the Pleadings

The Plaintiff does not argue that the Defendants' submission of the court documents from the state proceeding convert their motion into one for summary judgment. Instead, the Plaintiff states that by asking the Court to make a judicial determination of the defenses raised in the Defendants' answer, the Defendants have converted their motion into one for summary judgment.

This argument is completely unsupported, and in direct contravention of case law. It is not clear why the Plaintiff believes that the Defendants have converted the motion into one for summary judgment. The Court assumes that the Plaintiff refers to the Defendants' inclusion of multiple exhibits. It is true that when a party submits additional evidence to the Court in connection with a motion to dismiss, and that additional evidence was not attached to the complaint, incorporated in it by reference, or it is not a matter of which the court can take judicial notice, "a district court must either 'exclude the additional material and decide the motion on the

complaint alone' or 'convert the motion to one for summary judgment under FED. R .CIV. P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Mgrs. of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).  However, a court may consider documents upon which the Plaintiff relied in bringing the suit, as well as documents of which the Court may take judicial notice. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

While the Defendants ask the Court to consider documents outside the pleadings, those documents are admissible for the purposes of deciding a motion for a judgment on the pleadings. Namely, the Plaintiff's state court filings and the decisions of the state court judge. *Tirse v. Gilbo*, No. 615CV0987GTSATB, 2016 WL 4046780, at *14 (N.D.N.Y. July 27, 2016) (citing *Johnson v. Pugh*, 11-CV-0385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) (stating that, "[a] court may take judicial notice of matters of public record, including . . . decisions in prior state court adjudications"); *accord*, *Nemeth v. Vill. of Hancock*, 10-CV-1161, 2011 WL 56063, at *1 n.3 (N.D.N.Y. Jan. 7, 2011) (McAvoy, J.) (collecting cases); *Barnes v. Cty. of Monroe*, 85 F. Supp. 3d 696, 723 (W.D.N.Y. 2015)).  While it is true that the Court may only take judicial notice of these opinions to establish the existence of the opinion, not for the truth of the facts asserted in the opinion, as the Court will discuss below, the Court only need consider the fact that the decision was made, how it was made, and what was decided.

Therefore, the Court finds that the Defendants have not converted their motion into one for summary judgment.

**D. As to whether the Plaintiff's Claims Are Barred by the *Rooker-Feldman* Doctrine**

**1. The Relevant Law**

Although the Defendants address collateral estoppel/res judicata and the *Rooker-Feldman* doctrine separately in their original memorandum of law, "[t]he [*Rooker-Feldman*] doctrine is generally applied coextensively with principles of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion).  If a suit or claim would be barred in state court by either, *Rooker–Feldman* prevents the federal court from asserting subject matter jurisdiction."  *Vargas v. City of N.Y.*, 377 F.3d 200, 205 (2d Cir. 2004).

"Under the *Rooker–Feldman* doctrine [which is drawn from two Supreme Court cases], inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations."  *Id.*

"'[I]nextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . . , subsequent litigation will be barred under the *Rooker–Feldman* doctrine if it would be barred under principles of preclusion."  *Phifer v. City of New York,* 289 F.3d 49, 55–56 (2d Cir. 2002) (internal citations omitted); *see also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (Marshall, J., concurring) ("The federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.").  The Second Circuit has explained that:

> *Rooker–Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is "inextricably intertwined" with the state judgment.  But the phrase "inextricably intertwined" has no independent content.  It is simply a descriptive label attached to claims that meet the requirements outlined [by the Supreme Court].

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005)

Here, *res judicata*, or claim preclusion, is not triggered because an Article 78 proceeding does not implicate the same claims or relief as one brought pursuant to Section 1983. *See id.* ("[W]here, as here, a section 1983 action is brought by an unsuccessful Article 78 plaintiff, only issue preclusion triggers the *Rooker–Feldman* bar. New York's claim preclusion rule does not apply because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation."); *Colon v. Coughlin*, 58 F.3d 865, 870 n.3 (2d Cir. 1995) ("[C]laim preclusion generally does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter."); *Fortunatus v. Clinton Cty., N.Y.*, 937 F. Supp. 2d 320, 332 (N.D.N.Y. 2013) ("However, because an Article 78 court does not have the power to award the type of relief available in a § 1983 action, *res judicata*—a bar of the litigation—would not be applicable."); *Sorano v. Taggart*, 642 F. Supp. 2d 45, 52 (S.D.N.Y. 2009) ("Since Sorano could not have sought actual damages from the defendants in her Article 78 petition,[] she should not be precluded under the doctrine of *res judicata* from seeking monetary damages from the defendants in this Section 1983 federal action." (internal citations omitted)). Therefore, the Plaintiff's claims are not barred by *res judicata*.

The Second Circuit has said that issue preclusion, or collateral estoppel:

> bars litigation of an issue when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Proctor v. LeClaire,* 715 F.3d 402, 414 (2d Cir. 2013) (quoting *Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006)).

However, "[t]he mere failure to raise an issue in state court does not . . . invariably save a federal plaintiff from issue preclusion under *Rooker-Feldman*." *Vargas*, 377 F.3d at 206; *see also Fuchsberg & Fuchsberg v. Galizia,* 300 F.3d 105, 109 (2d Cir. 2002) (holding that a prior decision will have preclusive effect with regard to an issue, notwithstanding the failure of that prior decision to explicitly address that issue, "if resolution of the issue was by necessary implication . . . contained in that which was explicitly decided." (quotations, brackets and citation omitted)).

### 2. As to Whether the Plaintiff is Collaterally Estopped from Bringing His Instant Claims

The Defendants argue, without analyzing the issues determined by the New York State Supreme Court, that the Plaintiff is precluded from bringing *any* of his claims in federal court. The Plaintiff similarly sweeps broadly over the issues to contend that Article 78 proceedings do not bar Section 1983 actions. While it is true that Section 1983 claims are not barred by *res judicata* because a plaintiff previously commenced an Article 78 proceeding, such proceedings can collaterally estop a plaintiff from bringing Section 1983 claims in federal court. Here, in this case, the Plaintiff is collaterally estopped from bringing such claims. While the Plaintiff is not barred by the *Rooker-Feldman* doctrine from bringing his defamation claim, he has failed to plead sufficient facts to state a claim for such relief; and therefore that claim must also be dismissed.

The Plaintiff's federal suit includes claims for a violation of procedural and substantive due process in violation of Section 1983 and the New York State Constitution; and a claim for defamation. The Court notes that "[t]he due process guarantees of the New York Constitution have been interpreted by New York courts generally to be coextensive with federal due process protections." *DeMartino v. N.Y. State Dep't of Labor*, 167 F. Supp. 3d 342, 373–74 (E.D.N.Y. 2016) (citing *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 427 n.13 (2d Cir. 2011)

11

("With some exceptions, New York courts have interpreted the due-process guarantees of the New York Constitution and the United States Constitution to be coextensive—or assumed that they are."); *Spring v. Allegany–Limestone Cent. Sch. Dist.*, No. 14–CV–476, 2015 WL 5793600, at *9 (W.D.N.Y. Sept. 30, 2015) ("In the absence of a clear ruling that a different standard is to be applied, New York courts generally interpret the due-process guarantees of the New York Constitution and the United States Constitution as coextensive." (citations omitted)); *Hernandez v. Robles*, 7 N.Y.3d 338, 821 N.Y.S.2d 770, 855 N.E.2d 1, 14 (N.Y. 2006) (Graffeo, J., concurring) ("Although our Court has interpreted the New York Due Process Clause more broadly than its federal counterpart on a few occasions, all of those cases involved the rights of criminal defendants, prisoners or pretrial detainees, or other confined individuals."), *abrogated by Obergefell v. Hodges*, ––– U.S. ––––, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015)).  Therefore, the New York constitutional due process claims will be analyzed in the same fashion as the federal constitutional due process claims.

The Plaintiff's Article 78 petition was brought pursuant to subsection three of Section 7803 of the N.Y. C.P.L.R., which defines the scope of Article 78 proceedings.  It states that:

> The only questions that may be raised in a proceeding under this article are:
> . . .
> 3. whether a determination was made in violation of lawful procedure, was affected by an  error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed;
> . . . .

N.Y. C.P.L.R. § 7803.  The Plaintiff's Article 78 proceeding asked the Court to find that his termination was "arbitrary, capricious, unfair, and an abuse of discretion and affected by error of law because he had successfully completed all necessary requirements to enter the . . . Academy." (Defs.' Ex. 3 at 10–11).  The Plaintiff's Article 78 petition did not *explicitly* claim that he was

deprived of due process, nor did it seek to have the New York State Supreme Court declare that he was so deprived. However, as discussed below, in the Court's opinion, the Plaintiff's Article 78 petition and the decision of the New York State Supreme Court necessarily implicated both substantive and procedural due process.

### a. As to Whether the Plaintiff Can Be Estopped from Bringing These Claims Against Sini

Although the issue was not raised by either party, the Court notes that collateral estoppel would apply to the claims against Sini just as it would to the claims against the County and the SCPD. Even though Sini was not a party to the State Action, if the Court finds that the Plaintiff is collaterally estopped from bringing his claims, Sini receives the benefit of collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 337, 99 S. Ct. 645, 654, 58 L. Ed. 2d 552 (1979) (holding that mutuality of parties is not required for application of the doctrine of collateral estoppel); *Robinson v. Scully*, No. 89 CIV. 7244 (RJW), 1993 WL 340998, at *6 (S.D.N.Y. Aug. 23, 1993) ("Finally, although, unlike defendant Scully, defendant Artuz was not a party to plaintiff's Article 78 proceeding, he is nevertheless entitled to make defensive use of collateral estoppel against plaintiff."); *Abdul–Matiyn v. City of N.Y.,* No. 90 Civ. 7070 (PNL), 1991 WL 130189 at *1 n.1 (S.D.N.Y. July 8, 1991) ("[C]ollateral estoppel (or issue preclusion) . . . does not require identity of parties in the prior and subsequent litigation.").

### b. As to the Plaintiff's Substantive Due Process Claims

In order to plead a claim for substantive due process, a plaintiff must show that the government action complained of was "arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . ." *Cunney v. Bd. of Trustees*, 660 F.3d 612, 626 (2d Cir. 2011) (internal quotation marks omitted). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must

be truly brutal and offensive to human dignity." *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation marks omitted).

As to the substantive due process claim, although the New York State Supreme Court did not explicitly rule on the issue, it found that the actions of the State Action Defendants were not arbitrary or capricious. In fact, the entire State Action centered on whether the deeds of the State Action Defendants were arbitrary or capricious. Since any finding for the Plaintiff on the issue of substantive due process would require this Court to find that the actions of the Defendants were arbitrary and capricious, *see Cunney*, 660 F.3d at 626, the Plaintiff is collaterally estopped from bringing such a claim in federal court. That is, if the Court were to find for the Plaintiff on his substantive due process claim, it would have to find that the state court committed error to find that the Defendants' actions *were* arbitrary and capricious. Therefore, the Plaintiff's substantive due process claims are inextricably intertwined with the state judgment because finding for the Plaintiff on those claims would require a reversal of the state court's judgment that the Plaintiff's dismissal was not arbitrary or capricious.

The Court notes that while the state court did not decide whether the Defendants' actions were oppressive or shocking to the conscience, its holding that their actions were not arbitrary would almost certainly preclude such a finding. The issue of whether the Defendants' actions were arbitrary was actually raised and litigated in state court. There is no dispute that the Plaintiff had a full and fair opportunity to litigate the issue; and the state court relied on the fact that the Defendants' decision was not arbitrary to resolve the state court action.

Therefore, collateral estoppel and the *Rooker-Feldman* doctrine prevent the Plaintiff from bringing his substantive due process claims in federal court because the New York State Supreme Court explicitly held that the actions of the State Action Defendants were not arbitrary.

Accordingly, the Defendants' motion for a judgment on the pleadings pursuant to Rule 12(c) dismissing the Plaintiff's substantive due process claims is granted.

### c. As to the Plaintiff's Procedural Due Process Claims

In order to "plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (alteration, emphasis, and internal quotation marks omitted).

In reaching the conclusion that the Plaintiff's dismissal was not arbitrary or capricious, Justice Pitts relied on the fact that the Plaintiff was a probationary employee. Under New York law, a probationary employee may be dismissed without a hearing or a statement of reasons unless the dismissal was arbitrary or capricious. *Nash v. Bd. of Educ. of the City of N.Y.*, No. 99 CIV. 9611 (NRB), 2016 WL 5867449, at *6 (S.D.N.Y. Sept. 22, 2016) (citing *Rameau v. N.Y. State Dep't of Health*, 741 F. Supp. 68, 71 (S.D.N.Y. 1990) (collecting cases)); *Abbondandolo v. Lishansky*, 174 A.D.2d 738, 738, 571 N.Y.S.2d 957, 957 (N.Y. App. Div. 1991) ("As a probationary employee of the City of Glen Cove Police Department, the petitioner was assigned to train at the Nassau County Police Academy, and could be dismissed from the Academy at any time, without a hearing and without specific reasons being stated. In the absence of bad faith or reasons prohibited by law, such a determination will be upheld." (internal citations omitted)); *compare* N.Y. Civ. Serv. Law §75-1(a) (stating that individuals who have been permanently appointed to the competitive class of the civil service may not be removed except upon a hearing).

Therefore, in finding that the dismissal of the Plaintiff was not arbitrary or capricious, Justice Pitts necessarily found that the Plaintiff's procedural due process was not violated because he was not due a hearing. Said differently, Justice Pitts found that the Plaintiff was afforded

sufficient due process because the Plaintiff was a probationary employee, and the Defendants' actions were not arbitrary and capricious.

Furthermore, the case law is clear when a judge presiding over an Article 78 proceeding has to determine whether to intervene in the discharge of a probationary employee, the judge should "intervene only where it is shown that the discharge was made in bad faith, and therefore was arbitrary and capricious, or was due to constitutionally impermissible reasons, or was prohibited by statute or case law." *Whelan v. Rozzi*, 155 A.D.2d 603, 603, 547 N.Y.S.2d 660, 661 (N.Y. App. Div. 1989); *see also York v. McGuire*, 63 N.Y.2d 760, 761, 469 N.E.2d 838, 839 (N.Y. 1984) ("It is well settled that a probationary employee may be discharged without a hearing and without a statement of reasons in the absence of any demonstration that dismissal was for a constitutionally impermissible purpose or in violation of statutory or decisional law."); *Berry v. Perales*, 195 A.D.2d 926, 928, 600 N.Y.S.2d 838, 840 (N.Y. App. Div. 1993) (same); *Cortijo v. Ward*, 158 A.D.2d 345, 551 N.Y.S.2d 36, 36 (N.Y. App. Div. 1990).

Therefore, by finding that the Plaintiff's dismissal was not arbitrary and capricious, Justice Pitts had to consider whether it was constitutionally impermissible. As stated above, the Plaintiff's failure to raise the issue of due process in the state court does not prevent the Court from finding that he is nevertheless collaterally estopped from doing so because "resolution of the issue was by necessary implication . . . contained in that which was explicitly decided." *Fuchsberg & Fuchsberg,* 300 F.3d at 109 (quotations, brackets and citation omitted)); *see also Latino Officers Ass'n v. City of N.Y.*, 253 F. Supp. 2d 771, 787 (S.D.N.Y. 2003) (where Article 78 petitioner raised claims of discrimination and retaliation, "state court's determination that . . . decision to terminate him was supported by substantial evidence and that the penalty of dismissal did not 'shock our sense of fairness' . . . necessarily implied rejection of [petitioner's] claim that his termination was

16

discriminatory and retaliatory"); *Rameau v. N.Y. State Dep't of Health*, 741 F. Supp. 68, 71–72 (S.D.N.Y. 1990) ("In the Article 78 proceeding, the plaintiff claimed that his dismissal was arbitrary, capricious, unlawful and made in bad faith *because* it was based on racial and ethnic discrimination. Had the state court found that the allegations of discrimination were supported by the facts it could not have found that plaintiff was properly discharged. Therefore, the finding that plaintiff's dismissal was not based on race or ethnicity was essential to the state court's holding and that claim therefore cannot be relitigated here.").

While the Plaintiff argues that he was not a probationary police officer once he had completed all of his training and had been given a graduation date, the law does not support this contention. First, the Court notes that the New York State Supreme Court relied upon the fact that the Plaintiff was a probationary police officer in finding that his dismissal was not arbitrary and capricious. If the plaintiff had been a permanent employee, he would have had to be afforded a hearing, and the state court's analysis would have been different. However, as stated above, the state court found that because the Plaintiff was merely a probationary employee, he could be dismissed from his position as long as his dismissal was not arbitrary and capricious. Second, Rule 14 of the Suffolk County Civil Service Rules clearly states that "[e]very permanent appointment to the position of police officer from an open-competitive or promotional eligible list is for a probationary term of 18 months." SUFFOLK CTY. CIV. SERV. R. § 1200-14 (D)(2) (2013); *see also Santoro v. Cty. of Suffolk*, 20 A.D.3d 429, 429, 798 N.Y.S.2d 508, 509 (N.Y. App. Div. 2005) (probationary period for SCPD is 18 months). The Plaintiff was terminated approximately seven months after he passed the mental and physical examinations, which is the most generous starting point for his probationary period. Therefore, even if the Plaintiff was a permanent appointee, he was still subject to the probationary term.

17

The laws of New York State are clear that individuals appointed to competitive civil service positions, including police officers, must serve probationary periods, which may include—but are not coterminous with—training periods.  *See* N.Y. CIV. SERV. LAW § 63-1 ("Every original appointment to a position in the competitive class and every interdepartmental promotion from a position in one department or agency to a position in another department or agency shall be for a probationary term . . . .  [W]hen a permanent appointment or promotion to a position in the competitive class is conditioned upon the completion of a term of training service or of a period of service in a designated trainee title, such service and the probationary term for such competitive position shall run concurrently."); N.Y. COMP. CODES R. & REGS. tit. 4, § 4.3 ("The Civil Service Department may require that permanent appointments or promotions to designated positions shall be conditioned upon the satisfactory completion of a term of service as a trainee in such a position or in an appropriate, lower, training title or the completion of specified training or academic courses, or both. The period of such term of training service shall be prescribed by the department. Upon the satisfactory completion of such training term, and of specified courses if required, an appointee shall be entitled to full permanent status in the position for which appointment was made. Any appointment hereunder shall be subject to such probationary period as is prescribed in these rules."); N.Y. COMP. CODES R. & REGS. tit. 4, § 4.5 ("[P]ermanent appointments, promotions or transfers shall require, as provided herein, satisfactory completion of a probationary term which shall include a minimum and a maximum period of probation. Such probationary term shall commence on the effective date designated by the appointing authority and approved by the Civil Service Department for the appointment, promotion or transfer on a permanent basis. Such appointments, promotions or transfers shall not become permanent prior to satisfactory completion

18

of at least the minimum period and may require satisfactory completion of the maximum period of probation.")

Therefore, as Justice Pitts' decision necessarily implicated procedural due process, and it was essential to his decision, the Plaintiff is collaterally estopped form bringing procedural due process claims in federal court.  In that case, the parties litigated whether the State Defendants' actions were arbitrary and capricious.  The decision that the actions were not arbitrary and capricious was essential to Justice Pitts' decision and the resolution of the merits; and as stated above, there is no dispute that the Plaintiff had a full and fair opportunity to litigate the issues in New York State Supreme Court.  Accordingly, the Plaintiff's procedural due process claims are barred by collateral estoppel and the *Rooker-Feldman* doctrine.

The Court notes that even if the Plaintiff's procedural due process claims were not barred by the *Rooker-Feldman* doctrine, they would have to be dismissed for two interrelated reasons. First, the Second Circuit has consistently held that an Article 78 proceeding is sufficient to satisfy post-deprivation due process concerns. *See Vargas,* 377 F.3d at 208 (Article 78 proceeding provided meaningful remedy to raise due process violations concerning termination); *Lucarto v. Safir,* 264 F.3d 154, 174–75 (2d Cir. 2001) (plaintiffs failed to state due process claim because Article 78 review of their terminations was "wholly adequate post-deprivation hearing"); *Corredor v. United Fed'n of Teachers,* 162 F.3d 1147 (2d Cir.1998) (the Article 78 proceeding was a sufficient post-deprivation remedy to afford due process for teacher's termination); *Giglio v. Dunn,* 732 F.2d 1133, 1134 (2d Cir. 1984) ("Due process requires only that a hearing be held at a meaningful time and in a meaningful manner.  Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by

providing the latter.").  Therefore, as the Plaintiff received a post-deprivation Article 78 hearing, he cannot be said to have been deprived of either procedural or substantive due process.

Second, "[i]t is well settled that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason."  *Finley v. Giacobbe*, 79 F.3d 1285, 1297–98 (2d Cir. 1996) (citing *Meyers v. City of New York,* 208 A.D.2d 258, 262, 622 N.Y.S.2d 529, 532 (N.Y. App. Div. 1995); *York v. McGuire,* 63 N.Y.2d 760, 761, 480 N.Y.S.2d 320, 321, 469 N.E.2d 838, 839 (N.Y. 1984) (probationary employee may be terminated without a hearing or statement of reasons); *Flood v. County of Suffolk,* 820 F. Supp. 709, 713 (E.D.N.Y. 1993) (probationary employee had no property right in her position)); *see also S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 967 (2d Cir. 1988) ("In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating . . . the employment relationship *without cause.*" (emphasis in original)).  As the Plaintiff was a probationary employee, he did not have a property interest in his position, and therefore fails to state a claim for procedural due process upon which relief can be granted.

Accordingly, the Defendants' motion to dismiss the Plaintiff's procedural due process claims pursuant to Rule 12(c) is granted.

### d.  As to the Plaintiff's Defamation Claim

A claim for defamation under New York requires a plaintiff to show "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker [or writer], (vi) either causing special harm or constituting slander *per se,* and (vii) not protected by privilege."  *Albert v. Loksen,* 239 F.3d 256, 265–66 (2d Cir. 2001) (internal citations omitted).  The New York Civil Practice

Law and Rules mandate that in actions for defamation, "the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." N.Y. C.P.L.R. § 3016(a).

There is no evidence that the New York State Supreme Court considered any of the issues presented by such a claim. Therefore, the Defendants' motion to dismiss the Plaintiff's defamation claim on the ground that it is barred by the *Rooker-Feldman* doctrine is denied.

However, the Plaintiff has not alleged what "particular words" defamed him; to whom the disclosure(s) were made; or that any special harm was caused. The only facts alleged by the Plaintiff that relate to this cause of action are that he was discharged, dismissed, and that the Defendants "engage[d] on a course of conduct to harass, ridicule, slander, libel and impugn the character of the [P]laintiff." (Compl. ¶ 34). These statements are conclusory and insufficient; and do not state a claim upon which relief can be granted.

Accordingly, the Defendants' motion to dismiss the Plaintiff's defamation claim pursuant to Rule 12(c) is granted.

## III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the complaint pursuant to Rule 12(c) is granted in its entirety. The Plaintiff's federal and New York State constitutional due process claims are barred by the *Rooker-Feldman* doctrine, and the Plaintiff has failed to state a claim for defamation upon which relief can be granted. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED:**

Dated: Central Islip, New York

July 26, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge